## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| EVEREST NATIONAL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:24-cv-01347-NJR |
| vs. | ) | |
| | ) | |
| BAYSINGER ARCHITECTS, PLLC and CAPITAL DEVELOPMENT BOARD OF THE STATE OF ILLINOIS, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Everest National Insurance Company ("Everest"), by and through its counsel, submits this Complaint for Declaratory Judgment under 28 U.S.C. §§ 2201 and 2202 against Defendant Baysinger Architects, PLLC ("Baysinger") and nominal Defendant the Capital Development Board of the State of Illinois ("CDB").

## NATURE OF ACTION

1.     This is an action for declaratory judgment, brought pursuant to 28 U.S.C. §§ 2201 and 2202, seeking a declaration that no coverage exists under two insurance policies issued by Everest.

2.     Everest seeks a declaration that it owes no obligation to defend or indemnify Baysinger in connection with the claim asserted by CDB related to a roofing replacement project at the Shawnee Correctional Center in Johnson County, Illinois (the "CDB Claim").

3.     Everest has declined coverage for Baysinger for the CDB Claim.  Accordingly, an actual, justiciable controversy exists which is ripe for adjudication.

## PARTIES

4.      Plaintiff Everest is a Delaware Corporation with its principal place of business in Warren, New Jersey.

5.      Defendant Baysinger is a Florida limited liability company with the principal place of business in Marion, Illinois. Defendant Baysinger's sole member is Michael Baysinger, a natural person who is a citizen and resident of Illinois.

6.      CDB is a governmental agency created pursuant to 20 ILCS 3105/1, *et. seq.* and located in Springfield, Illinois.  CDB is a nominal defendant named as an interested and necessary party to this declaratory judgment action. *See, e.g., Williams v. Madison County Mut. Auto. Ins. Co.*, 40 Ill.2d 404 (Ill. 1968).

## JURISDICTION AND VENUE

7.      This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1) and 1332(c)(1), because there is complete diversity between the plaintiff and defendants, and the amount in controversy, exclusive of interest, exceeds $75,000.

8.      Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because at least one defendant resides in this District and a substantial part of the events giving rise to this claim occurred in this District.

## FACTUAL BACKGROUND

**A.**      ***The CDB Claim***

9.      The CDB Claim was first reported to Everest on August 9, 2022 via e-mail.  A true and correct copy of the August 9, 2022 e-mail is attached hereto as Exhibit A.

10.     The August 9, 2022 e-mail forwarded a July 25, 2022 e-mail from Baysinger to Risk Strategies advising that Baysinger "received a letter from Capital Development Board on Friday [July 22, 2022] in regards to a past project."  *See* Exhibit A.

11.     The July 25, 2022 e-mail further stated that "[i]t appears that they [CDB] will be seeking damages for our services as well as the contractor on the project."  *See* Exhibit A.

12.     The July 25, 2022 e-mail included a July 22, 2022 letter Baysinger received from CDB, stating that CDB hired Baysinger and Evrard-Strang Construction, Inc. ("Evrard-Strang") to provide design and construction services in connection with the replacement of the roof at the Shawnee Correctional Center.  A true and correct copy of the July 22, 2022 letter is attached hereto as Exhibit B.

13.     The July 22, 2022 letter stated that CDB's contracts with both Baysinger and Evrard-Strang were terminated for cause, but the date of termination was not provided.  The letter further stated that action had been taken by CDB related to the "prequalification status" of both Baysinger and Evrard-Strang, but the date of such action was not provided. *See* Exhibit B.

14.     The July 22, 2022 letter advised that "CDB anticipates seeking recovery for the damages incurred related to the design and construction services provided by Baysinger and Evrard-Strang." *See* Exhibit B.

15.     Based on the information provided to Everest on August 9, 2022, Everest retained counsel to defend Baysinger in connection with the CDB Claim.

**B.     *Baysinger's Knowledge of the Alleged Wrongful Acts and the CDB Claim***

16.     Everest has now learned that construction of the new roof at the Shawnee Correctional Center was halted in the fall of 2019 because Evrard-Strang did not have a required roofing contractor license.

17.     According to CDB, the scope of Baysinger's professional services related to the Shawnee Correctional Center roof project included ensuring that the roofing contractor was licensed.

18.     Everest also learned that in February 2020, CDB retained a consultant, Hutchinson Design Group, Ltd. ("HDG"), to inspect the roof reconstruction project at the Shawnee Correctional Center.

19.     HDG's March 27, 2020 report, which Everest recently obtained, details its findings from the February 2020 inspection and identifies a number of alleged deficiencies in Baysinger's work and Evrard-Strang's work.  HDG's March 27, 2020 report states that the items discovered within a few minutes on the roof during inspection were "inexcusable and unprofessional."

20.     After agreeing to provide a defense to Baysinger, Everest also learned that, via a February 25, 2021 letter, CDB advised Baysinger that "Baysinger failed to meet important aspects of its contractual obligations to CDB to such an extent that the construction performed under this project will have [to be] dismantled and the project re-started."  A true and correct copy of the February 25, 2021 letter is attached hereto as Exhibit C.

21.     The February 25, 2021 letter stated that Baysinger was CDB's representative at the work site but failed to identify deficiencies in Evrard-Strang's work and failed to ensure that Evrard-Strang was licensed by the State of Illinois. *See* Exhibit C.

22.     The February 25, 2021 letter further stated that CDB's consultant inspected the roof on February 20, 2020 and found deficiencies such that the roofing project would need to be re-done. *See* Exhibit C.

23.     The February 25, 2021 letter listed thirty-one deficiencies found in February 2020 by CDB's consultant and asserted that "Baysinger should have noticed, documented and reported each of these failures to CDB." Exhibit C (emphasis in original).

24.     The February 25, 2021 letter asserted that Baysinger spent more than eleven-hundred hours at the work site, but "failed to report the magnitude of the construction deficiencies" with such failure being "a direct cause for the need to dismantle the existing structure and re-start this project." The letter asserted that the "deficiencies in construction were ongoing, observable and should have been readily apparent to an architect applying the architectural standard of care." Exhibit C.

25.     Everest also recently learned that on July 16, 2021, CDB also sent Baysinger a "Notice of Intent to Terminate the Professional Services Agreement between Baysinger and CDB for design services for a roof replacement at the Illinois Department of Corrections – Shawnee Correction Center in Vienna, Illinois." A true and correct copy of the July 16, 2021 letter is attached hereto as Exhibit D.

26.     In the July 16, 2021 letter, CDB advised that it was terminating the contract with Baysinger for cause. The letter asserted that Baysinger neglected its obligation to properly supervise the roofing project at the Shawnee Correctional Center and again identified thirty-one deficiencies related to the roofing work. The deficiencies identified in the July 16, 2021 letter are substantially the same as the deficiencies identified in the February 25, 2021 letter. The letter asserted that "Baysinger should have noticed, documented and reported each of these failures to CDB." Exhibit D.

27.    The July 16, 2021 letter asserted that the "deficiencies in construction were ongoing observable, and should have been readily apparent to an architect applying the architectural standard of care."  Exhibit D.

C.    *The Everest Policies*

28.    Everest issued Architects & Engineers Professional Liability Insurance Policy No. PLEO00803-201 to Baysinger for the Policy Period of September 8, 2020 to September 8, 2021 (the "201 Policy").  A true and correct copy of the 201 Policy is attached hereto as Exhibit E.

29.    On August 3, 2021, Baysinger submitted its application to renew its professional liability coverage with Everest.

30.    In response to question 11, which asked whether any claims have been made against the insured in the past 12 months, Baysinger answered "No."

31.    In response to question 12, which asked whether the insured was aware of any circumstance that could give rise to a claim, Baysinger responded:

> We have one project with unusual circumstances. The project is with the State of Illinois, roof replacement project at a correctional facility. The contractor was removed from the job by the owner due to the lack of performance, poor installation and not having a roofing license. There has not been any demands from us, Baysinger Architects. It's just and unusual circumstances that we have never seen before.

A true and correct copy of the August 3, 2021 application is attached hereto as Exhibit F.

32.    Everest then issued Architects & Engineers Professional Liability Insurance Policy No. AAEP000201-211 to Baysinger for the Policy Period of September 9, 2021 to September 8, 2022 (the "211 Policy").  A true and correct copy of the 211 Policy is attached hereto as Exhibit G.

33.    The 201 Policy and the 211 Policy are collectively referred to as the "Everest Policies."

34.    The 201 Policy states in relevant part:

**SECTION I. INSURING AGREEMENTS**

**A.    COVERAGE PROVISION**

We will pay on behalf of the Insured **damages** that the Insured becomes legally obligated to pay because of claims made against the Insured for **wrongful acts** arising out of the performance of **professional services** for others.

**B.    CLAIMS-MADE PROVISION**

This insurance applies to a wrongful act only if all of the following conditions are satisfied:

**1.**    the **wrongful act** took place on or after the **Retroactive Date;**

**2.**    prior to the inception date of this policy or the first such policy issued and continually renewed by us, no Insured had knowledge of such **wrongful act** and had no basis to reasonably anticipate a **claim** that would be made. For purposes of this provision, prior knowledge of a **wrongful act** includes, but is not limited to, any prior **claim** or possible **claim** or circumstance referenced in an Insured's **application;**

**3.**    the **claim** arising out of the **wrongful act** is first made against any Insured during the **policy period;** and

**4.**    the **claim** is reported in writing to us no later than 60 days after the end of the **policy period** or, if applicable, during an extended claims reporting period.

(emphasis in original).

35.    The 201 Policy contains the following pertinent conditions:

**SECTION VII. CONDITION**

**A.  Insured's Duties in the Event of a Claim**

In the event of a **claim,** the Insured must do the following:

**1.**    When a **claim** is made, the Insured must give prompt written notice to us, but in no event later than 60 days after the end of the **policy period** or, if applicable, during an extended claims reporting period. Such written notice shall include every demand, notice, summons, or any other applicable information received by the Insured or the Insured's representative.

\*\*\*

**B. Reporting Possible Claims**

If during the **policy period** or any applicable extended **claims** reporting period, the Insured first becomes aware of a possible **claim** arising from a specific **wrongful act** in performing **professional services** for which coverage may be provided, such potential **claim** must be reported to us. The notice of the potential **claim** must be reported to us as soon as practicable during the **policy period** but no later than 60 days after the end of the **policy period** or, if applicable, during any extended claims reporting period.

(emphasis in original).

36.    "Claim" is defined in the 201 Policy as follows:

**"Claim"** means a demand received by the Insured for money, **damages** or **professional services** alleging a **wrongful act** arising out of the performance of **professional services.**

(emphasis in original).

37.    "Professional Services" is defined in the 201 Policy as follows:

**J.    Professional Services** means those services that the Insured is legally qualified to perform for others in the Insured's capacity as an architect, engineer, land surveyor, landscape architect, construction manager, scientist, technical consultant, interior designer, land planner, golf course designer or as otherwise defined by endorsement to the policy.

(emphasis in original).

38.    The 211 Policy states in relevant part:

**SECTION I – INSURING AGREEMENT**

**A. PROFESSIONAL LIABILITY**

The Insurer shall pay on behalf of the **Insured,** all **Loss** in excess of the Deductible, resulting from any **Claim** first made against the **Insured** during the **Policy Period** and reported during the **Policy Period** or **Extended Reporting Period,** if exercised, arising out of a **Wrongful Act** committed on or after the **Retroactive Date,** provided that prior to the inception date of this Policy or the first such policy issued and continually renewed by the Insurer, no **Insured** knew or could have reasonably expected that the **Wrongful Act** might give rise to a **Claim.**

(emphasis in original).

39.     The 211 Policy also provides that "[a]ll Related Claims Shall be deemed a single Claim."

40.     The 211 Policy specifies that "Related Claims" are Claims that have "as a common nexus any fact, circumstance, event, transaction, written service agreement, cause, or series of causally or logically connected facts, circumstances, events, transactions, written service agreements or causes…"

41.     The 211 Policy provides that a Related Claim is "deemed to be first made on the date the earliest of such Related Claims is first made against any Insured regardless of whether such date is before or during the Policy Period."

**D.**    ***Prior Coverage Correspondence***

42.     On August 17, 2022, Everest acknowledged receipt of Baysinger's correspondence in connection with the CDB claim.

43.     Everest retained defense counsel to defend Baysinger in connection with the CDB Claim.

44.     However, Everest subsequently learned that CDB advised Baysinger of the CDB Claim prior to its application for the 211 Policy and that Baysinger knew or could have reasonably expected before the 201 Policy that its alleged wrongful acts related to the CDB Claim might give rise to a Claim.

45.     On March 19, 2024, Everest declined coverage to Baysinger and notified Baysinger that it is withdrawing the defense provided to Baysinger for the CDB Claim.  A true and correct copy of the March 19, 2024 letter is attached hereto as Exhibit  H.

46.     Everest's March 19, 2024 letter asked Baysinger to consider withdrawing its request for coverage in lieu of Everest filing a declaratory judgment action to confirm its coverage position.  Everest asked Baysinger to execute a formal Waiver/Withdrawal Agreement by April 2, 2024. *See* Exhibit H.

47.     On March 26, 2024, Baysinger provided a response to Everest seemingly challenging Everest's coverage position.

48.     On April 2, 2024, Everest sent a letter to Baysinger responding to its March 26, 2024 communication, reiterating Everest's declination of coverage, and once again requesting Baysinger consider withdrawing its request by April 9, 2024.

49.     Baysinger thereafter made multiple requests for additional time to review Everest's coverage position and determine whether it would withdraw its request for coverage, with the last requested extension providing for a response by May 16, 2024.

50.     Everest received no response or further indication from Baysinger by May 16, 2024; therefore, Everest is now proceeding with this declaratory judgment action.

### COUNT I – DECLARATORY JUDGMENT
### The 201 Policy – Insuring Agreement Not Satisfied

51.     Everest incorporates and restates its allegations set forth in paragraphs 1 through 50 as if fully set forth herein.

52.     An actual case or controversy exists between Everest and Baysinger concerning coverage under the Everest Policies for the CDB Claim.

53.     The 201 Policy's insuring agreement requires "prior to the inception date of" the policy, "no Insured had knowledge of such wrongful act and no basis to reasonably anticipate a **claim** would be made."  (emphasis in original).

54.    Baysinger would have knowledge of the alleged wrongful acts at issue at least as early as February of 2020, when CDB's consultant inspected the roof and found the deficiencies that allegedly required that the work on the roof be re-done, and potentially in the fall of 2019, when work on the project was halted.  Such knowledge is a basis to reasonably anticipate that a claim would be made.

55.    The 201 Policy's insuring agreement also requires the "Claim" to be made during the Policy Period and reported in writing no later than 60 days after the end of the Policy Period of September 8, 2020 to September 8, 2021.

56.    The 201 Policy's definition of "Claim" includes "a demand received by the Insured for money, damages or professional services alleging a wrongful act arising out of the performance of professional services."

57.    The February 25, 2021 letter from CDB asserted that Baysinger failed to identify deficiencies in Evrard-Strang's work at the Shawnee Correctional Center and failed to ensure that Evrard-Strang was licensed by the State of Illinois.  The letter further asserted that the deficiencies "should have been readily apparent to an architect applying the architectural standard of care."

58.    The February 25, 2021 letter also asserted that the deficiencies were such that the roofing project would need to be re-done, resulting in damages to CDB.

59.    The February 25, 2021 letter is a "Claim" under the 201 Policy, for which prompt written notice was required.

60.    Baysinger did not notify Everest of the CDB Claim until August 9, 2022, well after the 201 Policy Period.

61.    Accordingly, the Insuring Agreement of the 201 Policy is not satisfied.

11

62.    Everest therefore seeks a judicial declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that it has no duty to defend or indemnify Baysinger in connection with the CDB Claim under the 201 Policy.

## COUNT II – DECLARATORY JUDGMENT
### The 201 Policy – Notice Conditions Not Satisfied

63.    Everest incorporates and restates its allegations set forth in paragraphs 1 through 50 as if fully set forth herein.

64.    An actual case or controversy exists between Everest and Baysinger concerning coverage under the Everest Policies for the CDB Claim.

65.    Section VII.A of the 201 Policy requires the Insured to "give prompt written notice" of a claim to Everest "but in no event later than 60 days after the end of the policy period" of September 8, 2020 to September 8, 2021.

66.    The 201 Policy's definition of "Claim" includes "a demand received by the Insured for money, damages or professional services alleging a wrongful act arising out of the performance of professional services."

67.    The February 25, 2021 letter is a claim under the 201 Policy, for which prompt written notice was required.

68.    Baysinger did not notify Everest of the CDB Claim until August 9, 2022, well after the 201 Policy Period.

69.    Section VII.B of the 201 Policy requires that Baysinger notify Everest as soon as practicable of "a possible claim arising from a specific wrongful act in performing professional services for which coverage may be provided."

70.      Section VII.B of the 201 Policy requires the potential claim to be reported to
Everest no later than sixty days after the end of the Policy Period of September 8, 2020 to
September 8, 2021.

71.      Section VII.B of the 201 Policy requires that "[t]he notice of the potential **claim**
must include the following:

> 1.      the potential claimant's name and address;
>
> 2.      a description of the **professional services** provided or that are alleged
>          should have been provided;
>
> 3.      an explanation as to why the Insured believes the **claim** may be made and
>          the date that the Insured first became aware of such possible **claim**; and
>
> 4.      an explanation of the type of claim that is anticipated.

(emphasis in original).

72.      If the February 25, 2021 letter is not a claim under the 201 Policy (which it is) it is
nonetheless a possible claim under the 201 Policy, for which prompt written notice was required.

73.      Baysinger did not notify Everest of the CDB Claim until August 9, 2022, well after
the 201 Policy Period and, as such, did not provide Everest with notice of a possible claim as
required by Section VII.B of the 201 Policy.

74.      Everest therefore seeks a judicial declaration pursuant to 28 U.S.C. §§ 2201 and
2202 that it has no duty to defend or indemnify Baysinger in connection with the CDB Claim under
the 201 Policy.

### COUNT III – DECLARATORY JUDGMENT
### 211 Policy – Insuring Agreement Not Satisfied

75.      Everest incorporates and restates its allegations set forth in paragraphs 1 through
50 as if fully set forth herein.

76.     An actual case or controversy exists between Everest and Baysinger concerning coverage under the Everest Policies for the CDB Claim.

77.     The 211 Policy's insuring agreement provides Professional Liability coverage only for a Claim "first made" against the Insured during the 211 Policy's Policy period of September 9, 2021 to September 9, 2022.

78.     The 211 Policy provides that [a]ll Related Claims shall be deemed a single Claim." A Related Claim is "deemed to be first made on the date the earliest of such Related Claims is first made against any Insured regardless of whether such date is before or during the Policy Period."

79.     Pursuant to the terms of the 211 Policy, the CDB first made claims against Baysinger related to its work at the Shawnee Correctional Center during the 201 Policy period, if not earlier.

80.     Accordingly, the CDB Claim does not constitute Claim "first made" against Baysinger during the 211 Policy's Policy Period.

81.     The 211 Policy's insuring agreement also provides that the Professional Liability coverage applies only if "prior to the inception date of this Policy or the first such policy issued and continually renewed by the Insurer, no **Insured** knew or could have reasonably expected that the **Wrongful Act** might give rise to a **Claim**." (emphasis in original).

82.     Baysinger would have had knowledge of the alleged wrongful acts at issue at least as early as February of 2020, when CDB's consultant inspected the roof and found the deficiencies that allegedly required that the work on the roof be re-done, and potentially in the fall of 2019, when work on the project was halted.  Such knowledge is a basis to reasonably expect that the alleged wrongful acts might give rise to a claim.

83.     Accordingly, no coverage is afforded to Baysinger under the 211 Policy.

84.     Everest therefore seeks a judicial declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that it has no duty to defend or indemnify Baysinger in connection with the CDB Claim under the 201 Policy.

### COUNT IV – RESCISSION
### Intentional and/or Material Misrepresentations When Applying for the 211 Policy

85.     Everest incorporates and restates its allegations set forth in paragraphs 1 through 50 as if fully set forth herein.

86.     Baysinger's misrepresentations when applying for the 211 Policy were made with actual intent to deceive Everest.

87.     In the alternative, Everest's misrepresentations when applying for the 211 Policy, materially affected the acceptance of the risk by Everest.  Everest would not have issued said Policy, or issued it subject to different premium or terms and conditions, had it known of Baysinger's misrepresentations.

88.     Pursuant to 215 ILCS 5/154 and principles of common law and equity, the 211 Policy should be ordered rescinded by the Court.

89.     Everest warrants that upon rescission of the 211 Policy, Everest is prepared to refund premium paid by Baysinger for said policy.

90.     Everest therefore seeks a judicial declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the 211 Policy is rescinded and has no effect and that Everest has no duty to defend or indemnify Baysinger in connection with the CDB Claim under the 211 Policy.

### COUNT V – DECLARATORY JUDGMENT
### Other Policy Terms, Conditions and Exclusions

91.     Everest incorporates and restates its allegations set forth in paragraphs 1 through 50 as if fully set forth herein.

92.     An actual case or controversy exists between Everest and Baysinger concerning coverage under the Everest Policies for the CDB Claim.

93.     Other terms, conditions and exclusions of the Everest Policies may bar or limit coverage and Everest reserves the right to rely on such terms, conditions and exclusion as appropriate given information developed through discovery in this matter.

94.     Everest therefore seeks a judicial declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that it has no duty to defend or indemnify Baysinger in connection with the CDB Claim under the Everest Policies.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Everest National Insurance Company, respectfully requests that this Court find in their favor and enter judgment as follows:

(a)     Judicial declaration that Everest has no duty to defend Baysigner under Policies No. PLEO00803-201 in connection with the CDB Claim;

(b)     Judicial declaration that Everest has no duty to indemnify Baysinger under Policy No. PLEO00803-201 in connection with the CDB Claim;

(c)     Judicial declaration that Everest has no duty to defend Baysinger under Policies No. AAE000201-211 in connection with the CDB Claim;

(d)     Judicial declaration that Everest has no duty to indemnify Baysinger under Policy No. AAE000201-211 in connection with the CDB Claim;

(e)     Any further relief that this Court deems just and equitable under the circumstances.

Dated: July 19, 2024                        *Respectfully Submitted,*

                                                **WALKER WILCOX MATOUSEK LLP**


                                        By:     */s/ Fred L. Alvarez*
                                                Attorneys for Everest National Insurance Company

16

WALKER WILCOX MATOUSEK LLP
One North Franklin, Ste. 3200
Chicago, Illinois 60606
(312) 244-6700